Filed 8/3/26  Lipa v. Rodriguez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CRYSTAL THOMAS LIPA, | B345965 |
| Respondent, | (Los Angeles County Super. Ct. No. 23SMRO00440) |
| v. | |
| JAVIER RODRIGUEZ, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David W. Swift, Judge.  Affirmed.

Javier Rodriguez, in pro per., for Appellant.

No appearance for Respondent.

Javier Rodriguez appeals the trial court's renewal of a domestic violence restraining order, contending that the court erred in treating his stipulation to entry of the initial restraining order as a finding of abuse, and that insufficient evidence supports renewal. Because his arguments lack merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Initial Domestic Violence Restraining Order

Rodriguez and Crystal Lipa dated on and off for four years between 2016 and 2020. Between 2020 and mid-2023, Rodriguez repeatedly came onto Lipa's property, followed Lipa and her children to family events, showed up at her children's schools, followed Lipa on errands, and sent her repeated emails. In September 2023, Rodriguez showed up at a Starbucks where Lipa had been, and tried to forcefully take away her car keys. In October 2023, he came to the porch of her residence (after hiding behind trees or cars) and refused to leave; once Lipa refused his entreaties to have sex, he blocked her driveway, preventing her from leaving.

In the fall of 2023, Lipa filed a request for a restraining order under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.).[1] The trial court entered a temporary restraining order on November 1, 2023, ordering that Rodriguez stay 100

---

[1] Rodriguez did not include Lipa's application in the record on appeal. Although this makes it more difficult to evaluate his arguments, the other portions of the record he does include are sufficient for us to consider his arguments on appeal.

All further statutory references are to the Family Code unless otherwise indicated.

yards away from Lipa and her four children (one of whom is an adult).

When the parties appeared, with counsel, at the April 8, 2024 hearing on Lipa's request, Lipa's counsel reported that the parties "agree[d] to a one-year restraining order" on the same terms and conditions as the temporary restraining order. Rodriguez's attorney added that, despite the parties' agreement, Rodriguez "is not making any admission of any sort." The court accepted the parties' stipulation and entered a restraining order after hearing that protected Lipa (as a "[f]ormer [r]omantic [p]artner") as well as her four children; ordered Rodriguez not to "[h]arass, . . . stalk, . . . or disturb the peace" of Lipa or her children, to stay 100 yards away from them, and not to contact them. The order was set to expire on November 30, 2024.

## II.    Renewal Request

On October 9, 2024, Lipa filed a request to renew the restraining order for an additional five years. In support of the request, Lipa stated that Rodriguez (1) sent Lipa's father $29 with the message, "For Thanks to your SUNSHINE [which is the nickname Lipa's father uses for Lipa] Im getting full custody," followed by a heart emoji; and (2) on at least four occasions "appeared" while Lipa or her children were out and about in public in the Westwood/UCLA area. Lipa stated that the message to her father "intimidate[d]" her and that Rodriguez's constant appearances caused her to be "anxious" and "visibly shaken."

Rodriguez opposed the renewal, and submitted an 11-page document listing the "reasons [he] d[id] not agree with [her] request" for renewal. Among those reasons are that *he* never admitted to the truth of the allegations underlying the initial

restraining order, that many of the instances Lipa now reported had occurred prior to the issuance of the initial restraining order, and that Lipa did not otherwise prove that she had a "reasonable apprehension of future abuse."

The court conducted a hearing on November 25, 2024. After swearing in both Lipa and Rodriguez, Lipa reaffirmed her prior statements, while Rodriguez explained that he had a "great relationship" with Lipa's father (and hence did not mean to intimidate Lipa) and that he also lived in the Westwood/UCLA area, making serendipitous encounters unavoidable. Rodriguez declined to discuss the October 2023 incident that precipitated the original restraining order due to a pending criminal matter.

The court granted a five-year renewal.[2] The court framed the "question" as "whether [Lipa] has a reasonable apprehension of abuse." The court declined to find that Rodriguez had "violated" the original restraining order by encountering Lipa because "both of [them] frequent Westwood" and because there was "no proof that it was a willful violation," but found that Rodriguez's message to Lipa's father was "much closer to a violation, if not a violation." The court nevertheless ruled that Lipa had established a reasonable apprehension of abuse because she had "put forth some pretty persuasive evidence that the incident in [October] 2023 was serious" as well as the message to her father; because Lipa showed that her encounters with Rodriguez had disturbed her "peace of mind"; and because the "fact that [Lipa and Rodriguez] go to the same neighborhoods" means that she "needs a restraining order for her protection."

---

2    Rodriguez did not include a copy of the renewed order in the record on appeal. We are nonetheless able to discern its terms from the court's oral ruling.

4

When Rodriguez told the court that he did not think that this renewal hearing would "rehash" prior events, the court explained that it "need[ed] some background on what happened" "to decide if [Lipa's] apprehension is credible," and reminded Rodriguez that "there's been a finding of domestic abuse back in 2023" because he "stipulated to that."

## III. Appeal

Rodriguez filed this appeal.[3]

### DISCUSSION

A domestic violence restraining order "may be renewed, upon the request of a party . . . for five or more years" if the party to be protected "entertains a reasonable apprehension" that "'abuse will occur at some time in the future if the protective order is allowed to expire.'" (§ 6345, subd. (a); *Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 179, quoting *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1288.) The party seeking renewal need not show that the initial restraining order was violated, or that "it is more likely than not that abuse will occur if the protective order is not renewed." (*Michael M.*, at p. 179.) And the party need not show a reasonable apprehension of physical abuse; *any* type of statutorily defined abuse will suffice, including "harassing or disturbing the peace" of the party. (*Ibid.*;

---

[3]     Rodriguez's notice of appeal purports to appeal the "[j]udgment after court trial" and lists the date of February 18, 2025—which is the date that the trial court denied Rodriguez's motion for reconsideration. Although a motion for reconsideration is not itself appealable, we can and do elect to construe Rodriguez's notice of appeal as appealing the earlier renewal order to which the reconsideration motion was solely directed and which was appropriately filed. (*Hughey v. City of Hayward* (1994) 24 Cal.App.4th 206, 210.)

5

§ 6203, subd. (a).)  In evaluating whether the party seeking renewal has established a reasonable apprehension of future abuse, a trial court is to consider (1) "the evidence and findings on which the initial [restraining order] was based"; (2) "'any significant changes in the circumstances surrounding the events justifying the initial protective order'"; and (3) "'the seriousness and degree of risk'" as well as "'the burdens the protective order imposes on the restrained person.'" (*Michael M.*, at p. 180, quoting *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333.)  We review a trial court's decision to renew a restraining order for an abuse of discretion, but review de novo whether the court applied the correct legal standard.  (*Michael M.*, at pp. 178-179.)

The trial court did not abuse its discretion in renewing the restraining order in this case.  The court properly considered the facts underlying the initial restraining order, noting that Lipa had "put forth some pretty persuasive evidence" that Rodriguez's conduct precipitating that order was "serious."  The court's observation that the parties continued to encounter each other in the Westwood/UCLA area—while not constituting a violation of the initial order—nevertheless showed that circumstances had not changed and that the risk to Lipa of further harassment if the order was not renewed was serious and the burdens on Rodriguez were minimal because Rodriguez would only need to not talk to her or "walk away" from the area where he encounters Lipa; the court was also careful to delineate that the order would not preclude Rodriguez from going about his business (at work or at school) in the area.

Rodriguez raises what boil down to two challenges to the renewal order.

First, he argues that the trial court considered a legally improper factor—which invalidates its ruling—because the court noted a prior "*finding* of domestic abuse" attendant to the initial restraining order, when, in fact, Rodriguez merely stipulated to the entry of that order while purporting to "not mak[e] an[] admission of any sort." (Italics added.) We reject this argument for several reasons. For starters, the trial court's comment about the prior finding was made in response to Rodriguez's questions—and was *not* part of its initial ruling, which rested on Lipa's "pretty persuasive *evidence*" of the conduct underlying the initial restraining order. (Italics added.) As noted above, the law makes the "evidence and findings" on which the initial order was based undeniably relevant to the question of whether to renew that order. More to the point, the fact that Rodriguez *stipulated* to the entry of a domestic violence restraining order rather than Lipa *proving* she was entitled to such an order is irrelevant: In either event, the court has to *find* prior abuse before it can issue such an order. (*C.C. v. D.V.* (2024) 105 Cal.App.5th 101, 110 ["By stipulating to the issuance of a one-year [restraining order after hearing], the parties effectively agreed [that the party to be restrained] had committed an act of domestic violence and—having accepted their stipulation and issued the [order]—the court necessarily found likewise."]; accord, *People v. Voit* (2011) 200 Cal.App.4th 1353, 1364 [noting that a plea of no contest in a criminal case has the same effect as a guilty plea, despite it resting on the admission of the defendant].) Accepting Rodriguez's argument would mean that no restraining order resting on a stipulation could be renewed; that would provide a blueprint for precluding renewals, which would contravene the intent of permitting them in the discretion of the trial courts.

7

Second, Rodriguez argues that the court's finding of reasonable apprehension of future abuse is unsupported by the record.  For the reasons explained above, we disagree.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT


We concur:


_____, J.

MOOR


_____, J.

KIM (D.)